# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § § | Case No. 4:09-CR-193 |
| | § | Judge Crone |
| FRANCESK SHKAMBI | § § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court is Defendant's Motion to Suppress Evidence (Dkt. #280). After considering the motion, the response (Dkt. #291), and the oral arguments of the parties on April 2, 2013, the Court recommends Defendant's motion be denied.

### BACKGROUND

On June 9, 2009, the following items were seized from Defendant's mother's (File Shkambi) residence: a handgun, ammunition, a camera, photographs, and Western Union documents. Defendant contends that the items should be suppressed because the probable cause in the search warrant affidavit was stale, and the items seized were outside the scope of the search warrant. Defendant argues that the information in the search warrant affidavit was stale, since the last illegal activity occurred more than four years before the search was conducted. Defendant also asserts that the items seized were not contained in the affidavit, and that the FBI agents exceeded the scope of the search, because they had to pry open the safe to obtain the contents. Defendant argues that this evidence was not seized in plain view. Defendant further contends that he has standing to challenge the search since he voluntarily left his residence for travel, and was planning to return to the residence.

The Government contends that the evidence seized should not be suppressed because Defendant lacks standing to challenge the search, the information contained in the affidavit was not stale, the items seized were authorized by the warrant or were in plain view, and the agents relied on the validity of the warrant in good faith. The Government argues that a passport is valid for 10 years, it is an ongoing crime that could be committed at any time during that 10 year period, and it is the type of evidence that would normally be kept at one's residence for a long period of time. The Government also asserts that Defendant has no standing to challenge the search of a residence that he left several years before to travel to another country, was arrested and served jail time in that country, and then when leaving that country, failed to return to his alleged residence.

During a hearing conducted on April 2, 2013, the Court heard testimony from Agent Stephen Remner and Special Agent Ken Schmittlein of the Federal Bureau of Investigations ("FBI"). Agent Remner testified that he works in the Detroit Field Office of the FBI, and has been with the FBI for 10 years. Agent Remner also worked as a law enforcement agent for 10 years prior to working for the FBI.

Agent Remner testified that he was involved in securing the search warrant from the Magistrate Judge in Michigan. In January of 2009, Agent Remner concluded that File Shkambi, Defendant's mother, was a resident of the house based on information obtained from surveillance, trash pulls, and mortgage records. Defendant's mother was being investigated for allegedly having a fraudulent passport. In addition, Agent Remner found that Defendant's mother was a convicted felon based on a conviction in 2003.

In February of 2009, Agent Remner learned that Defendant was in Albania, and that Defendant was arrested on drug-related charges. Agent Remner obtained newspaper articles, and

he arranged to have them translated form Albanian to English at the FBI office. Those documents revealed that Defendant was arrested in September of 2008 in Albania.

Agent Remner testified that in June of 2009, his role was the team leader for the execution of the search warrant. He put together the search participants and gave out responsibilities during the search. Agent Remner stated that during the search, he was looking specifically for the items listed in the search warrant affidavit in attachment B. During the search, he discovered a firearm inside a gun safe located in the closet of one of the bedrooms. Agent Remner testified that the safe had to be pried open by the FBI agents. The safe had an electronic combination with four fingers, an electronic code, and a key override. Agent Remner testified that no one inside the house that day was willing to provide the combination, so they pried open the safe. The safe contained a firearm, specifically, a Beretta 9mm handgun with a registration number which was traced to Defendant. The ammunition seized was 9mm ammunition. Agent Remner testified that he seized the firearm because Defendant's mother was a convicted felon who was prohibited from possessing a firearm. At the time of the search, Defendant's mother, wife, and children were present, as well as Defendant's sister's husband and children. Agent Remner stated that at the time the search warrant was prepared, the FBI knew Defendant was incarcerated in Albania. They also were aware that he resided there periodically when he was not travelling, and had done so since 2005.

In February of 2012, Defendant was arrested, taken into custody, and processed at the FBI field office. Defendant signed a form indicating that he wished to talk to the agents at that time. Agent Remner learned that Defendant was arrested in Albania, incarcerated for 3 years, and released in July of 2011. Defendant received his United States passport in December of 2011, and then flew to Canada where he stayed with his brother for two months until his arrest in 2012, upon re-entering

3

the United States.

Also at the hearing on April 2, 2013, Special Agent Ken Schmittlein testified that he worked in the Detroit Office of the FBI, and had been an agent for 10 years. Special Agent Schmittlein was the affiant for the affidavit for the search warrant. In preparing the search warrant, he met with Agent Remner to discuss the affidavit, spoke with the US Attorney, spoke with Special Agent Duggin of Immigration and Customs Enforcement ("ICE"), and Special Agent Andrew West of the Department of State. In 2009, the FBI conducted surveillance of the residence to establish that Defendant's mother was living there, and added paragraph 19 to the affidavit.

Special Agent Schmittlein acknowledged that the last illegal activity referred to in the affidavit occurred in November 2005 when Defendant's sister illegally crossed the border. However, he testified that most passports are issued for a duration of 10 years, so any search warrant or other issues pertaining to passports can last for up to 10 years.

On November 5, 2012, Defendant filed a motion to suppress. On December 12, 2012, the Governemnt filed a resposne (Dkt. #291). On April 2, 2013, the Court conducted a hearing on the motion.

## ANALYSIS

*Standing to Challenge the Search*

"'Fourth Amendment rights are individually held and cannot be asserted solely by reference to a particular place;' rather they may be enforced only by persons whose own protection under the Amendment has been violated." *United States v. Phillips*, 382 F.3d 489, 495 (5th Cir. 2004) (citing *United States v. Vega*, 221 F.3d 789, 797 (5th Cir. 2000), *abrogated on other grounds by Kentucky v. King*, 131 S.Ct. 1849 (2011)). Therefore, Defendant "must demonstrate that he had an individual

subjective and legitimate expectation of privacy" in the residence "in order to establish that his fourth amendment rights were violated." *Vega*, 221 F.3d at 798. Defendant must also demonstrate that the expectation of privacy is one which society would recognize as reasonable. *United States v. Kye Soo Lee*, 898 F.2d 1034, 1037-38 (5th Cir. 1990). Defendant "bear[s] the burden of establishing such an expectation by a preponderance of the evidence." *Id.* at 795.

An expectation of privacy is "reasonable inasmuch as it [has] 'a source outside of the Fourth Amendment by reference to [both] concepts of real property... law' and 'understandings that are recognized and permitted by society.'" *Id*. (citing *Rakas v. Illinois*, 439 U.S. 128, 143 n.12 (1978)). "The following factors are considered in the determination whether an interest is protected by the Fourth Amendment: whether the defendant has a possessory interest in the thing seized or the place searched, whether he has a right to exclude others from that place, whether he has exhibited a subjective expectation of privacy that it would remain free from governmental intrusion, whether he took normal precautions to maintain privacy and whether he was legitimately on the premises." *Id.* at 795-796 (citing *U.S. v. Ibarra*, 948 F.2d 903, 906 (5th Cir. 1991)).

The Government asserts that Defendant failed to establish that he has standing to challenge the search in question. Specifically, the Government argues that Defendant left the United States to travel to Albania in 2008. While in Albania in 2008, Albanian law enforcement officials seized four kilograms of heroin, and Defendant was arrested and detained in Albania for his involvement with the heroin seized. The search of Defendant's mother's home occurred on June 2, 2009. In September of 2009, Defendant was convicted in Albania for Cooperation in Narcotics Trafficking and sentenced to seven years and six months incarceration in Albania, which was later reduced to five years. Defendant served time in jail as a result of his conviction, and was released in July of

2011. After his release, Defendant traveled to Canada to stay at his brother's residence before returning to the United States. Based on these facts, the Government contends that Defendant had no expectation of privacy in the residence searched, and even if he did have a subjective privacy interest in the residence, that privacy interest is not one that society would recognize as reasonable.

The Court finds that Defendant does not have standing to challenge the search that occurred on June 2, 2009. Defendant failed to meet his burden of showing that he had a legitimate expectation of privacy in the residence searched. Defendant presented no evidence that the residence was his residence, that established any right to occupy the residence, and no one from Defendant's family testified that Defendant resided at this location. The residence in question belonged to File Shkambi, Defendant's mother. Therefore, the Court finds that Defendant had no legitimate subjective and reasonable expectation of privacy in the residence searched.

Further, even if Defendant had met his burden to show that he had a reasonable exception of privacy in the residence searched, the Court also finds that this expectation of privacy is not one that society would recognize as reasonable. For at least 2008 through 2011, Defendant did not reside at the residence, as he was incarcerated in Albania. Further, after being released from custody in Albania, Defendant did not return to what he now claims is his residence. Instead, he traveled to his brother's home in Canada, and stayed for two months before returning to the United States. Therefore, the Court finds that Defendant failed to meet his burden to show that this expectation of privacy is one that society is prepared to recognize as reasonable.

***Staleness of the Search Warrant***[1]

Staleness is to be determined on the facts of each case. *United States v. Webster*, 734 F.2d 1048, 1056 (5th Cir. 1984). A finding of staleness or timeliness of information can depend upon the nature of the unlawful activity, and when the information of the affidavit clearly shows a long-standing, ongoing pattern of criminal activity, even if fairly long periods of time have lapsed between the information and the issuance of the warrant. *Id.* Stale information in an affidavit cannot support probable cause. *United States v. Gallegos*, 239 F. App'x 890, 896 (5th Cir. 2007). "The proof must be of facts closely related in time to the issuance of the warrant in order to justify a finding of probable cause at that time." *United States v. McKeever*, 5 F.3d 863, 866 (5th Cir. 1993). The Fifth circuit in addressing staleness has identified two issues: "(1) Information reaching back over long periods may be used to support an affidavit 'if the information of the affidavit clearly shows a long-standing, ongoing pattern of criminal activity;' and (2) where the type of evidence sought is 'the sort that can reasonably be expected to be kept for long periods of time in the place to be searched,' the court is 'more tolerant of dated allegations.'" *United States v. Rojas Alvarez*, 451 F.3d 320, 332 (5th Cir. 2006) (quoting *United States v. Pena–Rodriguez*, 110 F.3d 1120, 1130 (5th Cir. 1997)).

Even if stale information cannot support probable cause, however, officers may be able to execute a warrant in good faith. "To prevail on his fourth amendment claim, [Defendant] must establish that the facts alleged in the affidavit were so dated that no reasonable officer could have believed that the affidavit established probable cause...." *Pena–Rodriguez*, 110 F.3d at 1130. "If the

---

[1] The Court finds that Defendant has no standing to contest the search, and based on this finding, the Court recommends Defendant's motion to suppress be denied. However, for completeness, the Court will consider the remaining arguments made by Defendant regarding the unconstitutionality of the search.

facts alleged in an affidavit are so dated that no reasonable peace officer could believe that probable cause was established, a Fourth Amendment violation has occurred." *United States v. Kleinkauf*, 487 F. App'x 836, 838-39 (5th Cir. 2012) (citing *Pena–Rodriguez*, 110 F.3d at 1130). To determine whether "stale" information in an affidavit makes a search fall outside the good faith exception, the Fifth Circuit has said that the proper inquiry is whether the staleness caused the warrant to be "so deficient that no reasonable officer could have believed that it established probable cause." *United States v. Craig*, 861 F.2d 818, 821 (5th Cir. 1988).

First, where the information in the affidavit shows a long-standing, ongoing pattern of criminal activity, the information need not be regarded as stale. *Rojas Alvarez*, 451 F.3d at 332. The affidavit sought items related to a violation of Title 18 U.S.C. § 1542, False Statements in Application and Misuse of Passport. The affidavit reflects that since 1997, the FBI investigated File Shkambi related to fraudulent passport activities. More fraudulent activities related to the false statements in application and misuse of passport allegations appeared in 2005 and 2006. The information in the affidavit clearly demonstrates a long-standing, ongoing pattern of criminal activity related to the charges for false statements in application and misuse of passport.

Second, where evidence is of the sort that can reasonably be expected to be kept for long periods of time in the place to be searched, it is less likely to be considered stale. A passport lasts for ten years, and is a type of evidence that can reasonably be expected to be kept for long periods of time at a person's residence. Therefore, for these reasons, the Court finds that the information contained in the search warrant affidavit is not stale.

Further, Defendant cannot establish that the facts alleged in the affidavit were so dated that no reasonable officer could believe that probable cause was established. Due to the ongoing nature

of the suspected fraudulent activity, the longevity of a passport, and the investigation being conducted by the FBI, the Court finds that a reasonable officer could have concluded that probable cause was established.

*Scope of the Search*

Defendant contends that the officers exceeded the scope of the search warrant when they seized the handgun, ammunition, camera, photographs, and Western Union documents.

The search warrant authorized the seizure of records, documents, and evidence related to violations of false statements in an application and misuse of a passport. Attachment B to the search warrant specifically allowed for the seizure of any and all forms of equipment commonly used in the production of counterfeit documents, including handmade or photographic evidence. Thus, the search warrant clearly authorized the seizure of the camera, photographs, and Western Union documents.

The Government admits that the handgun and ammunition were not specifically listed in the search warrant; however, the Government argues that plain view exception to the warrant requirement applies to the seizure of the handgun and ammunition. File Shkambi was a convicted felon at the time of the search, and it was a crime for her to possess a handgun and ammunition. Thus, the Government argues, the handgun and ammunition were seized as evidence of a crime in plain view of the law enforcement officers.

While the Fourth Amendment generally prohibits warrantless seizures, an officer is entitled to seize evidence in plain view without a warrant. *Horton v. California*, 496 U.S. 128, 134 (1990). "[T]he 'plain view' exception allows police to seize items where: (1) the police lawfully entered the area where the item was located; (2) the item was in plain view; (3) the incriminating nature of the

9

item was 'immediately apparent;' and (4) the police had a lawful right of access to the item." *United States v. Rodriguez*, 601 F.3d 402, 407 (citing *Horton*, 496 U.S. at 136-37).

The handgun and ammunition were found inside a safe inside the residence. "Generally only items described in a search warrant may be seized. An exception to this general rule, however, is found where a police officer has a warrant to search a given area for specified objects and in the course of the search comes across some other article of incriminatory character. The property is then seizable under the plain view doctrine." *United States v. Gereb*, 547 F. Supp. 2d 658, 664 (W.D. Tex. 2008) (quoting *United States v. Bills*, 555 F.2d 1250, 1251 (5th Cir. 1977) (holding that handgun found in a safe inside the residence during the execution of a search warrant was properly seized); *see also United States v. Nedd*, 582 F.2d 965, 966 (5 th Cir. 1978) (pistol is admissible under the plain view doctrine when discovered in a place where the police could properly be looking in execution of the warrant). In this case, the search warrant authorized the officers to search for documents that could have been located within a safe. Furthermore, the incriminating nature of the handgun and ammunition was immediately apparent to the officers, as File Shkambi was a felon at the time of the search. Therefore, the Court finds that the handgun and ammunition were properly seized.

***Good Faith***

The Government also contends that the law enforcement officer acted reasonably in reliance on the search warrant. In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court concluded "that evidence obtained by officers in objectively reasonable good-faith reliance upon a search warrant is admissible, even though the affidavit on which the warrant was based was insufficient to establish probable cause." *United States v. Satterwhite*, 980 F.2d 317, 320 (5th Cir. 1992) (citing

*Leon*, 468 U.S. at 922-23). The good-faith exception does not apply under any one of four situations: (1) the issuing magistrate was misled by an affiant who knowingly, or with reckless disregard for the truth, provided the affidavit on which the magistrate relied; (2) the magistrate wholly abandoned his judicial role and acted as part of the law enforcement team; (3) the law enforcement officer relied on a warrant based on an affidavit so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable; and (4) the warrant itself was so facially deficient that the executing officers could not have reasonably relied on its validity. *United States v. Cherna*, 184 F.3d 403, 407-08 (5th Cir. 1999). The initial burden is upon the Defendant to establish that the officers were not protected by the *Leon* good faith exception to the exclusionary rule. *United States v. Cavazos*, 288 F.3d 706, 710 (5th Cir. 2002).

Defendant has not satisfied his burden to establish that the officers were not protected by the *Leon* good faith exception to the exclusionary rule, and makes no argument that this exception should not apply. There is no evidence that the issuing magistrate was misled by an affiant who knowingly, or with reckless disregard for the truth, provided the affidavit on which the magistrate relied. There is also no evidence that the magistrate wholly abandoned his judicial role and acted as part of the law enforcement team.

"When a warrant is supported by more than a 'bare bones' affidavit, officers may rely in good faith on the warrant's validity." *Satterwhite*, 980 F.2d at 321 (citations omitted). A "bare-bones" affidavit is one that contains "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *Id*. (citations omitted). In the opinion of the Court, the affidavit here is not "bare bones" and provides sufficient details to establish probable cause to believe that illegal activity was occurring at the residence or evidence of

illegal activity would be found there. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983) (describing "bare bones" affidavits as those in which the affiant merely declares his belief that unlawful activity is occurring without providing any facts from which a judicial officer can independently assess the likelihood that the affiant's belief is correct). The affidavit was not "bare bones" and provided a sufficient factual basis to enable the magistrate to make a meaningful probable cause determination. *United States v. Laury*, 985 F.2d 1293, 1311 (5th Cir. 1993) (quoting *Satterwhite*, 980 F.2d at 321).

The officers executing the warrant relied upon a facially valid search warrant which contained sufficient probable cause for the search. Further, the totality of the circumstances described in the affidavit provided the judge with sufficient information to conclude that there was a fair probability that evidence of a crime would be found at the searched residence. Thus, the Court also finds that the good faith exception applies in this case.

## RECOMMENDATION

Based on the foregoing, the Court recommends that Defendant's Motion to Suppress Evidence (Dkt. #280) be **DENIED**.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th

Cir. 1988).

**Signed on the day**

**Jul 31, 2013**

AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE