# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | CASE NO. 4:09-CR-193 |
| | § | |
| FRANCESK SHKAMBI | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court are Defendant's Motion to Suppress Title III Phone Intercept Evidence (Dkt. #357) and Defendant's Motion to Suppress Detroit Title III Phone Intercept Evidence (Dkt. #358).[1] After considering the motions and the response thereto (Dkt. #361), the Court recommends the motions be denied.

## BACKGROUND

Beginning on November 28, 2007, and continuing through May of 2008, the Government applied for and received authorization in the Eastern District of Texas to intercept wire communications for multiple phone numbers, including (214) 232-8899, (469) 879-2191, (214) 527-4909, (972) 974-4385, (214) 926-9470, and (469) 879-0290. The phone numbers were used by co-conspirators indicted along with Defendant on October 15, 2009, for violation of Title 21 U.S.C. § 846, Conspiracy to Distribute or Possess with Intent to Distribute Cocaine, Heroin, Ecstasy or Marijuana. Defendant was listed as a target in the phone intercept applications, and numerous calls involving Defendant were intercepted and recorded.

In January of 2007, the Government applied for and received authorization in the Southern Division of the Eastern District of Michigan to intercept wire communications for

---

[1] Also pending before the Court is Defendant's Motion to Suppress Illinois Title III Phone Intercept Evidence (Dkt. #359). At this time, the Court does not have the applications and affidavits issued in Chicago, Illinois, and thus, cannot consider Defendant's motion. The Court will address Defendant's third motion to suppress when it receives the applications and affidavits.

phone number (248) 719-4184, which was allegedly being used by Defendant. The Government subsequently applied for extensions for the phone intercepts. Defendant was listed as a target in the phone intercept application, and numerous calls involving Defendant were intercepted and recorded.

On September 3, 2013, Defendant moved to suppress evidence of the contents of the intercepted calls from those phone numbers located in the Eastern District of Texas (Dkt. #357) and the Eastern District of Michigan (Dkt. #358). On September 12, 2013, the Government filed its response to all three motions (Dkt. #361).

## ANALYSIS

Defendant contends, generally, that the evidence obtained from the intercepted calls should be suppressed because the applications for the intercepts failed to establish probable cause of the commission of a crime or attempt thereof, as required under 18 U.S.C. § 2518(3). Defendant asserts that the orders of authorization of approval were facially insufficient.

Defendant's motions to suppress contain no specific factual allegations or legal arguments, and merely argue that suppression is appropriate because the applications lack probable cause. Title III of the Omnibus Crime Control and Safe Streets Act of 1968 authorizes the use of wiretap surveillance in the context of a criminal investigation. 18 U.S.C. § 2516. To intercept communications between private persons, law enforcement officers must apply for authorization from a federal judge. *Id.* The judge may enter an ex parte order authorizing interception of "wire, oral, or electronic communications within the territorial jurisdiction of the court in which the judge is sitting (and outside that jurisdiction but within the United States in the case of a mobile interception device authorized by a Federal court within such jurisdiction)." 18 U.S.C. § 2518(3). The judge must determine on the basis of the facts submitted by the

applicant that: (1) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense...; (2) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception; (3) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous; and (4) there is probable cause to believe that the facilities from which the wire, oral, or electronic communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or commonly used by such person. *Id.*

Defendant's motions only argue that there was insufficient probable cause. "An order authorizing a wiretap, like an ordinary search warrant, must be supported by a finding of probable cause." *United States v. Gonzales*, 866 F.2d 781, 786 (5th Cir. 1989). "If the judge uses common sense and bases [his or her] finding on the entire picture presented to [him or her]," then the "determination is conclusive in the absence of arbitrariness." *Id.* (citing *United States v. Weinrich*, 586 F.2d 481, 487 (5th Cir. 1978)). "The task of the issuing judge is to make a common sense decision whether the affidavit shows a fair probability that evidence will be obtained, according to all the circumstances, including the veracity and basis of knowledge of anyone supplying hearsay information." *Id.* The Fifth Circuit has instructed that "probable cause is to be gleaned from a 'common sense reading of the entire affidavit.'" *United States v. Duffey*, No. 3:08-CR-0167-B, 2009 WL 2356156, at *3 (N.D. Tex. July 30, 2009) (citing *United States v. McCoy*, 539 F.2d 1050, 1055 (5th Cir. 1976); *United States v. Hyde*, 574 F.2d 856, 863 (5th Cir. 1978)).

"It is axiomatic that in order to obtain a wiretap pursuant to Title III, as when seeking a search warrant, the government must make a showing of probable cause." *United States v.*

*Madrid*, 916 F. Supp. 2d 730, 737 (W.D. Tex. 2012) (citing *United States v. Bannerman*, No. Crim. 03-10370-DPW, 2005 WL 2323172, at *3 (D. Mass. Aug. 25, 2005)).  In addition, it is not necessary for the Government to make a showing of probable cause for each individual named in a wiretap application and affidavit.  *Id.* (collecting cases); *e.g. United States v. Domme*, 753 F.2d 950, 954 n.2 (11th Cir. 1985); *United States v. Figueroa*, 757 F.2d 466, 475 (2d Cir. 1985) ("[T]he government need not establish probable cause as to all participants in a conversation.  If probable cause has been shown as to one such participant, the statement of the other participants may be intercepted if pertinent to the investigation.") (citations omitted); *United States v. Vargas*, 116 F.3d 195, 196 n.1 (7th Cir. 1997) (no probable cause needed to simply list a defendant in a wiretap application as a probable converser); *United States v. Little*, No. 11-189-01, 2012 WL 489194, at *3 (W.D. La. Feb. 14, 2012) ("There is no requirement for probable cause to be demonstrated as to every individual who is named as a target interceptee.").

"Title III requires a judge to find that there is probable cause to believe that 'an individual is committing, has committed, or is about to commit a particular offense enumerated' in the statute."  *Madrid*, 916 F. Supp. 2d at 739 (citing 18 U.S.C. § 2518(3)(a)).  "In addition, the statute requires the judge to find that there is probable cause that 'particular communications concerning [the] offense will be obtained through' the interception."  *Id.* (citing 18 U.S.C. § 2518(3)(b)).  "Finally, except under circumstances not applicable to the instant cause, a judge must also find that there is probable cause to believe 'that the facilities from which… the wire, oral, or electronic communications are to be intercepted are being used, or are about to be used in connection with the commission of such offenses.'"  *Id.* (citing 18 U.S.C. § 2518(3)(d)).[2]

---

[2] In considering the law to be applied to the present case, the Court has considered the recent Fifth Circuit case, *United States v. North*, No. 11-60763, 2013 WL 4516143 (5th Cir. Aug. 26, 2013); however, the Court believes that the reasoning in *North*, does not apply to the present case because the arguments made in *North* are different than those made here.

Some of the information contained in the affidavit is based on information obtained from confidential informants. "Where 'much of the information contained in the supporting affidavit comes from confidential informants, the magistrate's search for probable cause must be guided by and measured against the familiar standards set forth in' *Aguilar v. Texas*, 378 U.S. 108 (1964), and *Spinelli v. United States*, 393 U.S. 410 (1969)." *Id.* at 740 (citing *Hyde*, 574 F.2d at 862). "Under *Aguilar* and *Spinelli*, 'the magistrate must be told of the underlying circumstances and particular facts which support the confidential informant's conclusions, and he must also be told why the informant should be considered reliable.'" *Id.* (citing *Hyde*, 574 F.2d at 862).

The burden of proof is on the movant seeking suppression of evidence to produce 'some evidence on specific factual allegations sufficient to make a prima facie showing of illegality.'" *United States v. Duffey*, No. 3:08-CR-0167-B, 2009 WL 2356156, at *4 (citing *United States v. de la Fuente*, 548 F.2d 528, 533 (5th Cir. 1977)). "[G]eneral, conclusory allegations based upon mere suspicions do not entitle a defendant to have evidence suppressed." *Id.* Defendant has provided no evidence and no specific factual allegations sufficient to show illegality, and the Court recommends that his motions be denied on this point alone. However, in order to give Defendant's motions full consideration, the Court now turns to each of the applications to determine whether the applications were supported by probable cause.

<u>Applications Filed in the Eastern District of Texas</u>

The first application filed on November 28, 2007, authorized the interception of wire communications for telephone number (214) 232-8899 ("Target Telephone 1"), which was believed to be used by Zumer Ziberi ("Ziberi") in the operation of a narcotics trafficking and money laundering organization, known in the affidavit as the Lusha Organization.

The second application, filed on December 19, 2007, authorized the interception of wire communications for Target Telephone 1, and telephone number (469) 879-2191 ("Target Telephone 2"), which was believed to be used by Besnik Lusha in the operations of the Lusha Organization. The third application, filed on January 17, 2008, also authorized the interception of wire communications for Target Telephone 2.

A fourth application, filed on February 13, 2008, authorized the interception of wire communications for Target Telephone 2 and telephone number (214) 527-4909 ("Target Telephone 3"), which was also believed to be used by Besnik Lusha in the operations of the Lusha Organization.

A fifth application, filed on March 12, 2008, authorized the interception of wire communications for Target Telephone 2, Target Telephone 3, and telephone number (972) 974-4385 ("Target Telephone 4"), which was also believed to be used by Besnik Lusha in the operations of the Lusha Organization.

A sixth application, filed on April 10, 2008, authorized the interception of wire communications for Target Telephone 2, Target Telephone 3, and telephone number (214) 926-9470 ("Target Telephone 5"), which was believed to be used by Besnik Lusha in the operations of the Lusha Organization.

A seventh application, filed on May 8, 2008, authorized the interception of wire communications for Target Telephone 2[3], Target Telephone 3, and Target Telephone 5, which were believed to be used by Besnik Lusha in the operation of the Lusha Organization.

The information provided in the seven affidavits is relatively similar, and frequently builds upon each affidavit as additional evidence is obtained throughout the investigation. In

---

[3] The number for Target Telephone 2 was changed to (459) 879-0290 on May 6, 2008. The IMSI and subscriber information remained the same.

order to avoid redundancy, the Court will summarize the facts as set forth in affidavits as a whole. The affiant identifies six confidential informants who provided information to the investigation. CI-1 is described as an individual who assisted law enforcement officers, and whose information has been independently corroborated to the extent possible by law enforcement. CI-1 is a paid informant, and has a criminal record, which includes a 2005 federal conviction for money laundering. According to the affiant, CI-1 has agreed to cooperate with law enforcement in exchange for sentencing consideration in that criminal matter. Since January of 2007, CI-1 has posed as an individual with connections to drug traffickers, and has developed a relationship with Ziberi, who has sought to purchase narcotics from CI-1's associates. Also, CI-1 has had numerous consensually-recorded meetings and telephone conversations with Ziberi during which he/she and Ziberi discussed their drug trafficking and money laundering activities.

Another informant, CI-2, has cooperated with law enforcement officials in several prior investigations, leading to 20 arrests and convictions. Some of those arrests and convictions were related to investigations of organized crime and homicides. To the extent possible, the information provided by CI-2 has been corroborated by law enforcement.

Another informant, CI-3, has assisted law enforcement in numerous criminal investigations since 2001. CI-3 is also a paid informant, and the information provided by CI-3 has been corroborated to the extent possible by law enforcement, including through the use of consensually-recorded telephone calls and controlled purchases of narcotics. In the past, CI-3 provided information that resulted in four indictments and convictions.

Another informant, CI-4, has assisted law enforcement in this investigation since January of 2007, and has provided information that has been corroborated to the extent possible by law enforcement.

Another informant, CI-5, has assisted law enforcement in numerous criminal investigations since December of 2003. As early as January of 2004, CI-5 reported that Ziberi was involved in narcotics trafficking with his relative, Besnik Lusha. The information provided by CI-4 and CI-5 has been corroborated through the consensually-recorded phone conversations with CI-1.

Another informant, CI-6, is described in the affidavit as a person who cooperated with law enforcement in numerous criminal investigations and is a paid informant. The affiant indicates that the information provided by CI-6 has been corroborated by consensually-recorded telephone and body recordings, controlled drug purchases, Title III interceptions, and physical surveillance. In addition, the affiant describes numerous examples of information provided by the informants that has been corroborated by law enforcement.

The affiant relates the background of the investigation going back to January of 2007, in which the Frisco High Intensity Drug Trafficking Areas ("HIDTA") began investigating an Albanian criminal enterprise, the Lusha Organization, that is involved in narcotics trafficking and money laundering. Besnik Lusha lives in Frisco, Texas, and Rakip Lusha lives in Arlington, Texas. Ziberi manages Poppy's Italian Pizza & Bar (Poppy's), which is located in Frisco, Texas, and owned by Besnik Lusha. Poppy's is used as a meeting place to discuss and transact narcotics and money laundering business. The affiant relates several consensually recorded telephone conversations between CI-1 and Ziberi discussing narcotics operations and money laundering for the purchase of cocaine. On July 2, 2007, CI-1 met with Ziberi, and other individuals, in the parking lot behind Poppy's to discuss a proposed narcotics transaction. During this meeting, Defendant approached the vehicle and spoke with Ziberi in Albanian language. Ziberi told CI-1 that Defendant was his cousin and that Defendant had transported

cash in the past for the purchase of narcotics from Chicago to Frisco. The affidavit contains descriptions of many incriminating phone calls between CI-1 and Ziberi. In addition, the law enforcement officers used a pen register on all telephone numbers to obtain additional information during their investigation.

Throughout each affidavit, the affiant describes numerous telephone conversations both obtained via intercepted wire communications or by consensually-recorded telephone conversations involving informants, in which Lusha, Ziberi, Defendant, and others discuss various narcotics transactions and other illegal schemes. The affidavits note that the affiant's information is obtained from a variety of sources including information from confidential informants, consensually-recorded conversations, a review of telephone records, Title III interceptions over cellular telephones, and physical surveillance. The affiant believes that the target suspects assist the Lusha Organization by distributing kilogram quantities of cocaine, and possibly marijuana, ecstasy, and heroin, in the Dallas, Texas, area, as well as to customers in Chicago, Illinois, Detroit, Michigan, Newark, New Jersey, and Europe. In addition, the FBI believes that Besnik Lusha is involved with a money laundering scheme involving a loan from a hard money lender, also known as a loan shark, to one of Besnik Lusha's associates. In addition, the affiant describes CI-6 as being part of the Lusha Organization, and attests that CI-6 attended meetings with Lusha to further the purposes of the narcotics operations.

Based on this information, and evaluating the totality of the circumstances, the Court finds that the affidavit contained more than enough facts for the issuing judge to find that there was probable cause to believe that at least one of the named individuals was "committing, has committed, or is about to commit a particular offense enumerated in the statute." *Madrid*, 916 F. Supp. 2d at 739 (citing 18 U.S.C. § 2518(3)(a)). Furthermore, the information provided by the

affiant regarding the confidential informants is substantial and more than allows the issuing judge to determine the reliability of their contributions to the investigation. Moreover, the affidavit provides more than enough facts to make a showing of probable cause to believe that intercepting wire communications from Target Telephones 1, 2, 3, 4, and 5 would aid law enforcement in obtaining "particular communications concerning [the] offense" through the interception. *Id*. (citing 18 U.S.C. § 2518(3)(b)). Finally, the affidavit provides enough facts for the issuing judge to find that there was probable cause to believe "that the facilities from which… the wire, oral, or electronic communications are to be intercepted are being used, or are about to be used in connection with the commission of such offenses." *Id*. (citing 18 U.S.C. § 2518(3)(d)). For these reasons, the Court recommends that Defendant's Motion to Suppress Title III Phone Intercept Evidence (Dkt. #357) be denied.

*Applications Filed in the Eastern District of Michigan*

The application filed in the Eastern District of Michigan authorized the interception of telephone number (248) 719-4184, which was believed to be used by Defendant and others in connection with the violation of Title 21 U.S.C. § 841(a)(1), 846 and 843(b), which are offenses involving the procurement, concealment, transportation, distribution and sale of narcotics and the unlawful use of communication facilities.

The affiant describes the history in which he became familiar with Defendant, and the Albanian narcotics trafficking industry with which Defendant is involved beginning in 2005. Through information received from a Canadian investigation, the affiant learned that the Canadian investigators believed that the organization was transporting approximately 200 pounds of marijuana a week to the United States, and one of the main members of this organization was Defendant, who regularly travels to Canada. FBI-1 is a confidential informant

who advised the affiant about the ongoing operations of Astrit Bekteshi, a known organizer of an international drug trafficking organization. The affiant notes that FBI-1 has personal knowledge concerning Bekteshi's narcotics trafficking activities, and is a convicted felon who is currently on parole. The information provided by FBI-1 has been corroborated through interviews of other cooperating sources and information received from other law enforcement agents. FBI-1 no longer wishes to assist the FBI.

The affiant conducted a detailed investigation including conducting trash pulls, obtaining phone records, and obtaining Western Union receipts that revealed wire transfers of extensive amounts of money. In addition, a Canadian federal judge ordered the interception of wire communications for Defendant, and the affiant sets forth the details of the conversations intercepted in the affidavit. The content of the conversations involves transporting large amounts of money and narcotics transactions in which Defendant is involved. In addition, the affiant describes the results of a pen register placed on the targeted telephone.

Based on this information, and evaluating the totality of the circumstances, the Court finds that the affidavit contained more than enough facts for the issuing judge to find that there was probable cause to believe that at least one of the named individuals was "committing, has committed, or is about to commit a particular offense enumerated in the statute." *Madrid*, 916 F. Supp. 2d at 739 (citing 18 U.S.C. § 2518(3)(a)). Furthermore, the information provided by the affiant regarding the confidential informants is substantial and more than allows the issuing judge to determine the reliability of their contributions to the investigation. Moreover, the affidavit provides more than enough facts to make a showing of probable cause to believe that intercepting wire communications from the targeted telephone would aid law enforcement in obtaining "particular communications concerning [the] offense" through the interception. *Id.*

(citing 18 U.S.C. § 2518(3)(b)). Finally, the affidavit provides enough facts for the issuing judge to find that there was probable cause to believe "that the facilities from which… the wire, oral, or electronic communications are to be intercepted are being used, or are about to be used in connection with the commission of such offenses." *Id*. (citing 18 U.S.C. § 2518(3)(d)). For these reasons, the Court recommends that Defendant's Motion to Suppress Detroit Title III Phone Intercept Evidence (Dkt. #357) be denied.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the Court recommends Defendant's Motion to Suppress Title III Phone Intercept Evidence (Dkt. #357) and Defendant's Motion to Suppress Detroit Title III Phone Intercept Evidence (Dkt. #358) be **DENIED.**

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 30th day of September, 2013.**

AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE